## Florence A. Pangburn, Administratrix, Appellee, v. Knickerbocker Ice Company, Appellant.

### Gen. No. 20,900.   (Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed June 10, 1915. *Certiorari* denied by Supreme Court (making opinion final).

## Statement of the Case.

Action by Florence A. Pangburn, administratrix of the estate of John Franklin Pangburn, deceased, plaintiff, against Knickerbocker Ice Company, a corporation, and Levi & Company, defendants, to recover for the wrongful death of plaintiff's intestate. The action was dismissed as to defendant Levi & Company and there was a verdict and judgment for plaintiff against defendant ice company, for $8,000, from which defendant appeals. .

⸰See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Pangburn v. Knickerbocker Ice Co., 193 Ill. App. 50.

The facts were as follows: Levi & Company were in control of an ice house in which the defendant ice company delivered ice through a door in the east end of the building near the roof. The building had a flat roof and immediately over the door was a six by six beam eighteen feet long, which was securely fastened to the roof. The east end of this beam extended about two feet beyond the building. The beam did not extend out far enough from the building, and perhaps the chain from which the pulley block was suspended did not raise the pulley block high enough to permit the ice brought up by the tackle to go in at the door, and a plank four feet three and one-half inches long was nailed to the top of the beam, the east end of which extended east of the east end of the beam eighteen inches, leaving two feet nine and one-half inches of the plank resting on and nailed to the beam. On top of this plank a block of wood was placed and the chain from which the pulley block was suspended was passed around the block and plank a few inches east of the east end of the beam. The beam, plank and block on top of the plank had been in the position described at least eighteen years before the accident. During all this time the defendant provided the pulley block, rope, tongs and other appliances for raising the ice and attached the pulley block to the chain. The defendant ice company and it alone used the beam, plank, chain, pulley block and tackle for the purpose of raising ice. On the day of the accident, certain of the ice company's employees, including the deceased, were engaged in unloading a car of ice which stood just east of the ice house, and hoisting ice by means of the tackle and putting it into the ice house through the door above mentioned. In this work a horse was used to hoist the ice. In doing so it was found that the ice could not be raised high enough to go in at the door without the pulley block striking against the plank from which it was suspended. About one-third of the carload of ice had been raised

before the accident, and each time that ice was hoisted the pulley block struck against the beam with such force as to cause a jar, and the ice company's superintendent decided that the trouble should be remedied and directed the deceased to go up on the roof and remedy it. In obedience to the order, deceased went on the roof and attempted to remedy the trouble by inserting another block of wood between the chain and the block of wood over which it passed, for the purpose of raising the chain and the pulley block suspended from it. The deceased inserted a block of wood under the chain and signaled the men below to hoist the ice. He then laid down, either on or alongside of the beam and plank with one hand resting on the plank and with his head and body extended about a foot from the building so that he could see as the ice was hoisted whether the trouble had been remedied. When a lot of ice had been hoisted to within a few feet of the door, the strain on the projecting east end of the plank pulled that part of the plank which was nailed to the beam loose from the beam, and the plank, chain, pulley block, ice, etc., fell to the ground, a distance of thirty-five or forty feet, carrying with them plaintiff's intestate, and in the fall he was so injured that he died from the effect of his injuries.

The plank did not break, but the strain on the outer end of the plank acting on the end of the beam to which the plank was nailed, as a fulcrum, pulled that part of the plank which was nailed to the beam loose from the beam and permitted the plank and appliances attached to it to fall to the ground. An examination of the plank and beam showed that the plank was rotten; that a part of the nails by which it was fastened to the beam were pulled through the plank and remained sticking in the beam, and other nails were pulled out of the beam and remained in the plank. The position of the deceased on or alongside of the plank did not tend to pull the plank loose from the beam, for

his weight rested on that part of the plank which was nailed to the beam and not on that part of the plank which extended beyond the end of the beam.

The jury returned two verdicts, one finding Levi & Company guilty and assessing plaintiff's damages as against them at $3,000; the other finding the ice company guilty and assessing plaintiff's damages against it at $5,000. The record showed that, "thereupon, the trial judge orally instructed the jury that there was a mistake in the rendering of the verdict, and stated orally and not in writing that if they found all the defendants guilty all must be included in one verdict, and they should then assess whatever damages they, the jury, found from the evidence and under the instructions of the court the plaintiff has sustained. The trial judge then directed the jury orally to return and bring in such a verdict, all of which was done in the absence of the defendant, etc.  *  *  *  Thereupon, the jury returned into the court and presented to the court the following verdict, signed by all the jurors: 'We, the jury, find the defendants guilty and assess the plaintiff's damages at the sum of $8,000.' And as soon as the said proceedings came to the knowledge of the Knickerbocker Ice Company it then and there by its counsel excepted to said procedure, etc." The court sustained the motion of Levi & Company for a new trial and the suit was then dismissed as to them, and denied the ice company's motion for a new trial and entered judgment on the verdict against the ice company.

McKinley & Hansen, and Winston, Payne, Strawn & Shaw, for appellant; Edward W. Everett, of counsel.

James C. McShane, for appellee.

Mr. Justice Baker delivered the opinion of the court.

## Abstract of the Decision.

1. MASTER AND SERVANT, § 188*—*when master liable for injury to servant acting in obedience to its order.* Evidence in an action to recover for the death of an employee caused by a fall from a roof, examined and *held* to warrant a finding that the employee had gone on the roof in obedience to an order of the master to remedy a defect in a hoisting apparatus affixed to the roof.

2. MASTER AND SERVANT, § 167*—*when master chargeable with notice of defect in appliance.* Evidence, in an action to recover for the death of an employee alleged to have been caused by the fall of a defectively fastened hoisting appliance, examined and *held* to warrant a finding that the master knew or by the exercise of due care care could have learned that the appliance was so unsecurely fastened that it was liable to be pulled loose.

3. MASTER AND SERVANT, § 125*—*what degree of care owed by master as to safety of appliances.* A master, who employs in his work a hoisting appliance, consisting of a beam projecting from a roof and having attached to and projecting from it a plank, owes its employees the duty of exercising ordinary care to keep the beam and plank in a reasonably safe condition.

4. MASTER AND SERVANT, § 134*—*when master guilty of negligence in using defective appliance.* In an action to recover for the death of an employee alleged to have been caused through the fall of part of a hoisting appliance, consisting of a beam and plank fastened together, the evidence examined and *held* to warrant a finding that the master was guilty of negligence in permitting the plank to be and remain unsecurely fastened to the beam.

5. MASTER AND SERVANT, § 698*—*when risk not assumed by servant.* In an action to recover for the death of an employee alleged to have been caused by the fall of a defective hoisting appliance, evidence examined and *held* not to warrant a finding that the employee assumed the risk of the fall of the appliance.

6. MASTER AND SERVANT, § 699*—*when servant not guilty of contributory negligence.* In an action to recover for the death of an employee alleged to have been caused by the fall of a defective hoisting appliance which he was on the roof adjusting in obedience to the master's order, evidence examined and *held* not to warrant a finding that the employee was guilty of contributory negligence.

7. MASTER AND SERVANT, § 161*—*when duty of inspecting appli-. ances on master and not on servant.* The duty of inspecting a hoisting appliance which the master used in his business is on the master and not on the servant, and the latter has the right to assume, in the absence of anything tending to the contrary, that it is

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

securely fastened when he goes on it to adjust it in obedience to the master's orders.

8.   INSTRUCTIONS, § 166*—*when oral instruction as to form of verdict not error.* Where, in an action against two defendants to recover for the death of plaintiff's intestate, the jury returns two verdicts, one finding one defendant guilty and assessing the damages against it at a certain sum, and the other finding the other defendant guilty and assessing the damages against it at a different sum, it is not error for the court to instruct the jury orally, and in the absence of defendants, that if they should find all the defendants guilty, all must be included in one verdict and they should then assess whatever damages they should find, from the evidence and under the instructions, the plaintiff had sustained and that they should return and bring in such a verdict.